Shelby R. MOSES, Appellant,

v.

Chris R. HALSTEAD, Respondent.

No. WD 62059.

Missouri Court of Appeals,
Western District.

Aug. 10, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 28, 2004.

Phillip A. Burdick, Esq., St. Joseph, MO, for Appellant.

Timothy J. Mudd, Esq., Kansas City, MO, for Respondent.

Before HARDWICK, P.J., SPINDEN and NEWTON, JJ.

LISA WHITE HARDWICK, Judge.

Shelby Moses appeals from a jury verdict awarding her $100,000 in actual damages for injuries suffered in a car accident. She contends the trial court erred in denying her request for a new trial because the amount of the verdict was inadequate. We find the verdict was supported by the evidence and, thus, the trial court did not abuse its discretion in denying a new trial.

### FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of November 22, 1996, Moses was riding in a car driven by Chris Halstead. Both had been drinking alcoholic beverages for several hours in Topeka, Kansas, before getting into the car and heading toward Missouri. When Halstead attempted to elude law enforcement officers in Buchanan County, he wrecked the car and Moses suffered head injuries. Halstead later pled guilty to driving while intoxicated and related criminal charges.

Moses was hospitalized for eleven days after the car accident. During the next seven months, she had follow-up visits with her physician, Dr. Mary Middleton, for treatment of her closed head injuries and attended outpatient rehabilitative therapy for the resulting speech, memory, and physical impairments. Upon release from the treatment and therapy in June 1997, Moses did not seek any additional medical care for more than four years.

In April 1998, Moses filed a Petition for Personal Injuries seeking actual and punitive damages against Halstead. The issue of damages was tried to a jury in September 2002, after Halstead admitted liability for the car accident.

At trial, Moses presented uncontroverted evidence that her head injuries resulted in past medical expenses of $89,252.53. An expert testified that her future medical expenses could range from $100,000 to $300,000 based on her recent complaints of residual cognitive difficulties, headaches, and weakness on her left side. At the time of trial, Moses had been employed as a casino waitress for four years and had made good grades in completing three community college courses.

After the close of evidence, the jury returned an initial verdict of $44,636.27 in actual damages and awarded no punitive damages. Moses moved for a mistrial, arguing the amount of the verdict was inconsistent with the uncontroverted evidence of actual damages. Halstead objected to the mistrial motion but agreed that the amount of actual damages was incorrect and requested the trial court to allow further jury deliberations on that claim.

The trial court proposed a remedy of additur to increase the actual damages award to approximately $92,000, consistent with the undisputed evidence of Moses' past medical expenses. Moses declined to move for additur, insisting that a new trial

was necessary because the jury had ignored the evidence of her pain and suffering and future medical expenses. The court denied the mistrial motion and also refused to accept the jury's initial verdict. The court instructed the jury to continue deliberations on the actual damages claim, pursuant to MAI 2.06.[1]

After resuming deliberations, the jury sent the following note to the court:

Total amount of expenses as a result of accident approximately $90,000 medical. What other expenses were there to consider? Are we missing something? It is our belief that both parties are equally responsible and should share the cost. It is our belief that Shelby is not entitled to future help from Mr. Halstead.

The trial court advised the jury that it could not answer the questions, and that the jury should re-read all of the instructions and consider the evidence in light of those instructions in reaching their verdict.

The jury subsequently returned a verdict for $100,000 in actual damages. The court accepted the verdict and denied Moses' renewed mistrial motion. The court also rejected Moses' motion for a new trial, wherein she contended the verdict "was not fair, reasonable or adequate compensation for [her] uncontroverted damages." Moses appeals from the denial of her requests for a new trial.

## STANDARD OF REVIEW

A trial court has broad discretion in determining whether to grant a new trial on grounds of inadequacy of a verdict. *Kenniston v. McCarthy*, 858 S.W.2d 268, 271 (Mo.App.1993). On appeal, our review of the denial of a new trial is limited to consideration of the evidence that supports

the trial court's decision. *Id.* The court's denial of a new trial is conclusive unless the verdict is so shockingly inadequate as to indicate it resulted from passion and prejudice or a gross abuse of discretion. *Norris v. Barnes*, 957 S.W.2d 524, 528 (Mo.App.1997). The size of the jury award alone does not establish that it resulted from bias or passion. *Id.* at 527. The complaining party must show the jury was prejudiced by some trial error or misconduct of the prevailing party. *Id.* at 528.

## POINT ON APPEAL

In her sole point on appeal, Moses contends the trial court erred in refusing to grant a new trial after the jury returned an inadequate verdict of $100,000 in actual damages. She argues the verdict was inadequate because the jury ignored "the uncontroverted evidence of [her] medical bills and future medical expenses, as well as [her] pain and suffering." She also contends the inadequacy resulted from the jury's improper application of comparative fault principles.

The record confirms that Moses presented undisputed evidence of her past medical expenses in the amount of $89,252.53. The jury's award of $100,000 was clearly adequate to compensate her for those medical bills. Thus, we need only determine whether the remaining $10,747.47 of the verdict was adequate to compensate her for pain and suffering and future medical expenses based on the evidence presented at trial. We disagree with Moses' contention that the evidence of these additional damages was uncontroverted. Her claim of on-going pain and suffering stood in stark contrast to her relatively brief hospital stay, rapid therapeutic recovery, and failure to seek further

---

1. The court read the following instruction, patterned after MAI 2.06:

The court cannot accept your verdict as written. You should examine your verdict in light of the instructions. A new verdict form [for actual damages] is attached for your use, if needed. Do not destroy any of the verdict forms.

medical care. Although expert testimony indicated her future medical expenses could exceed $100,000, the need for such future medical care was doubtful in light of Moses' treatment history and record of substantial progress.

The evidence favorable to the judgment established that Moses was released from the hospital and began a course of outpatient rehabilitative therapy on December 3, 1996, eleven days after suffering head injuries in the car accident. By mid-January 1997, Moses and her therapists agreed that she was cognitively functioning at her pre-accident levels. Testing revealed that her reading, writing, speaking, and language skills were within the normal range. Moses returned to driving motor vehicles and began seeking employment in March 1997. She discontinued all of her post-accident therapy and follow-up medical visits in June 1997. Moses did not pursue any additional medical treatment until more than four years later, in November 2001, when she sought care for an on-the-job injury.

Since ending her post-accident treatment in June 1997, Moses has completed three community college courses and has exhibited the physical and mental ability to complete a degree program. She earned two A's and a B grade in psychology, sociology, and human anatomy courses. Although Moses testified that her cognitive difficulties might prevent her from earning a college degree, her own expert concluded otherwise. After conducting a neuropsychological evaluation, the expert testified there was nothing to indicate Moses was incapable of completing a college program and that "she certainly could get a Bachelor's Degree."

Moses returned to her job as a waitress at Golden Corral after her post-accident treatment and was consistently employed in the five years leading up to the trial in September 2002. She worked as a grocery store cashier, as a sales associate at J.C. Penney, and as a waitress at Harrah's Casino, where she had been employed four years at the time of trial.

When she was injured on-the-job at Harrah's in November 2001, Moses sought treatment from Mary Middleton, the same physician who treated her injuries from the car accident. Middleton fully examined Moses and conducted two follow-up visits in January and March 2002. Although Middleton acknowledged that victims of head injuries often experience cranial nerve damage and on-going problems with speech, difficulty swallowing, or changes in mood or judgment, she found no such problems with Moses. Middleton specifically noted that Moses showed good judgment and had good mood and affect during the office visit on November 28, 2001.

■ There was substantial evidence in the record that Moses had little or no need for continuing medical care in the five years preceding her trial in September 2002. Based on this evidence, the jury could reasonably conclude that her claim for pain and suffering and future medical care, alleging additional damages in the range of $100,000 to $300,000, was speculative and inflated. "The determination of the amount of damages for personal injuries in a tort action falls primarily within the jury's discretion because it involves the credibility of the witnesses and the weight to be given their testimony." *Kenniston,* 858 S.W.2d at 271. After weighing the credibility of Moses' claim, the jury determined that she was entitled to recover $89,252.53 for her undisputed past medical expenses and $10,747.47 for pain and any residual injuries she *may* experience in the future as a result of the 1996 car accident. The trial court properly deferred to the jury's determination and denied the motion for new trial because the verdict was supported by the evidence at trial.

Although Moses has failed to show the verdict was inadequate, we nonetheless address her related contention that the jury improperly applied comparative fault principles in determining the damages award. This contention is based on the jury's note in response to the trial court's rejection of the initial verdict awarding $44,636.27 in actual damages. The jury's note explained the initial verdict by stating, in relevant part: "Total amount of expenses as a result of accident approximately $90,000 medical. What other expenses were there to consider? ... It is our belief that both parties are equally responsible and should share the cost."

The note indicates the jury had attempted to apply comparative fault principles by awarding Moses only half of her actual expenses. However, the court redirected that improper attempt by advising the jury to re-read and follow the instructions originally given. Moses was not prejudiced because the trial court salvaged the verdict by giving the jury an opportunity to correct its mistake. *Vancil v. Carpenter*, 935 S.W.2d 42, 47 (Mo.App.1996).

After further deliberations, the jury awarded damages to fully compensate Moses' past medical expenses and an additional amount to compensate her for pain, suffering and the possibility of future medical expenses. There is no indication the jury applied comparative fault principles in reaching the final verdict accepted by the trial court. Accordingly, we find no trial error and no abuse of discretion in the denial of the mistrial and/or new trial motions.

The judgment is affirmed.

All concur.